IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ULTRAVISION TECHNOLOGIES, LLC | |
| **Plaintiff,** | Civil Action No.  2:16-cv-895 |
| v. | |
| SHENZHEN ONLY OPTOELECTRONIC TECH CO LTD | JURY TRIAL REQUESTED |
| **Defendant.** | |

## COMPLAINT

Plaintiff Ultravision Technologies, LLC ("Ultravision") files this Original Complaint for patent infringement against Defendant Shenzhen Only Optoelectronic Tech Co Ltd ("Shenzhen Only") for infringement of U.S. Patent No. 9,349,306 ("the '306 Patent"), entitled "Modular Display Panel" (the "Patent-in-Suit"), pursuant to 35 U.S.C. § 271 (a copy of the Patent-in-Suit is attached as Exhibit A).

## I.      PARTIES

1.      Plaintiff Ultravision is a corporation incorporated and existing under laws of the State of Delaware and is registered to do business in Texas.  Ultravision has its principal place of business at 4542 McEwen Road, Dallas, Texas 75244.

2.      Upon information and belief, Defendant Shenzhen Only is a limited liability company incorporated under the laws of the People's Republic of China, with registered business office in Shenzhen, Guangdong, China.  Shenzhen Only may be served with process in China

-1-

pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents.

## II.     JURISDICTION AND VENUE

3.      This is an action for patent infringement under the patent laws of the United States, 35 U.S.C. §271.

4.      This Court has personal jurisdiction over Defendant.  Upon information and belief, Defendant has conducted and does conduct business within the State of Texas, directly and/or indirectly through intermediaries (including distributors, retailers, and other individuals or entities).  Upon information and belief, Defendant makes, uses, imports, ships, distributes, offers for sale, sells, installs, and/or advertises its products and/or services in the United States, the State of Texas, and the Eastern District of Texas.

5.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(b).

6.      Ultravision has its headquarters in the Dallas-Ft. Worth Metroplex in Texas and operates a modular assembly, repair, testing, and storage facility in Allen, Texas. Much of the design and developmental activity was conducted in and around the Dallas-Ft. Worth Metroplex. Ultravision's employees have handled and continue to handle the design, development, testing, modular assembly, repair, distribution, marketing, and sale of its products out of its headquarters and related facilities in and around Dallas, Texas.  These employees developed trade secret and confidential information in Texas, which is protected by a Non-Disclosure Agreement and a Supplier Agreement between Ultravision and Shenzhen Only, as discussed below.  Ultravision's employees physically reside in the Dallas-Ft. Worth Metroplex, including William Hall, Ultravision's Chief Executive Officer and an inventor.

-2-

7.      Upon information and belief, Shenzhen Only maintains and/or operates
http://www.onlyled.net.cn/, a website that is viewable in the Eastern District of Texas and
elsewhere.  Upon information and belief, Shenzhen Only offers to sell its products in the Eastern
District of Texas through its website and its distributors.   Upon information and belief, these
products include the M-series and V-series products charged with infringement herein,
hereinafter referred to as "Shenzhen Only's Accused Products."   Upon information and belief,
Shenzhen Only has sold, offered for sale, and/or shipped Shenzhen Only's Accused Products to
LED City, an LED lighting and sign company with offices located at 2415 Southwell Rd, Dallas,
TX 75229.       Upon information and belief, LED City maintains and/or operates
http://www.ledcityusa.com/, a website that is viewable in the Eastern District of Texas and
elsewhere.   Upon information and belief, Shenzhen Only has sold, offered for sale, and/or
shipped Shenzhen Only's Accused Products to Galaxy Amusement Sales Inc./Camaleon LED,
an LED lighting and sign company with offices located at 123 W. Bloomingdale Ave #259,
Brandon, FL 33511.   Upon information and belief, Galaxy Amusement Sales Inc./Camaleon
LED maintains and/or operates http://www.galaxyamusementsupply.com/, a website that is
viewable in the Eastern District of Texas and elsewhere.   Thus, upon information and belief,
Shenzhen Only endeavors to serve the market for LED display products in the Eastern District of
Texas directly or through its distributor(s).

8.      During the week of April 13, 2015, representatives from Shenzhen Only,
including its Managing Director, met with representatives of Ultravision at Ultravision's offices
in Dallas. Prior to their visit, Ultravision's Chief Executive Officer, William Hall ("Mr. Hall"),
had heard rumors that Ultravision's customers could purchase Ultravision products at a lower
price. Based on those rumors as well as certain observations of Ultravision's quality control

person on the ground at Shenzhen Only's facility, Ultravision believed that Shenzhen Only was very likely breaching its exclusivity obligations under the Supplier Agreement. Accordingly, at the meeting in Dallas, Mr. Hall confronted Shenzhen Only's representatives about whether they were selling Ultravision products to third parties. The Shenzhen Only representatives admitted that they were doing so, and they even identified several such companies to Ultravision's CEO. They further stated that they had hired several sales people and were marketing and trying to sell Ultravision products to dozens of companies throughout the United States. Mr. Hall expressly told Shenzhen Only at that meeting that the Supplier Agreement prohibited such activities and that Ultravision would be forced to take legal action unless Shenzhen Only stopped doing so.

9.      Therefore, upon information and belief, Shenzhen Only has offered to sell, sold, and intentionally and voluntarily placed infringing products into the stream of commerce with the expectation and understanding that those products will be offered for sale, sold, purchased, and/or used by its customers and/or distributors in the State of Texas and the Eastern District of Texas.

10.      As a result, Shenzhen Only has committed the tort of patent infringement throughout the United States, within the State of Texas and, particularly, within the Eastern District of Texas.

### III.      FACTUAL BACKGROUND

A.      **Ultravision Invested Substantial Money and Time to Design, Develop, and Test a New LED Display.**

11.      The Chief Executive Officer of Ultravision, William Hall, has a long-standing career in the commercial lighting and video billboard industry.  Mr. Hall formed Ultravision's predecessor, Ultravision Holdings, LLC ("Ultravision Holdings"), in 2010 to focus on LED displays and lights for the billboard industry.  Ultravision was formed in 2014 to formalize a

joint venture arrangement with Active Media Services, Inc., doing business as Active International ("Active").  Active is one of the world's largest purchasers of media advertising. Pursuant to the joint venture transaction, Ultravision Holdings contributed substantially all of its assets, including all of its intellectual property (e.g., patents and trade secrets) and contract rights, to Ultravision.  The Patent-in-Suit has been assigned to Ultravision, and Ultravision owns the rights and interests pertaining thereto.  Ultravision has become a leading innovator, designer, manufacturer, and distributor of high-efficiency digital video displays, LED lighting, and electronic scoreboards.

12.    Ultravision's management and design team has extensive experience in the LED lighting and LED digital advertising industry.  Its displays have been installed throughout the world, including at New York's Times Square and London's Piccadilly Circus.  Most recently, one of Ultravision's projects for a customer won an award for Europe's best LED display and the Best Original Digital Billboard by the Daily Digital Out of Home ("DOOH") on-line publication in London in December 2015.

13.    In September 2012, Ultravision Holdings began discussions with Shenzhen Only about Shenzhen Only possibly manufacturing LED display panels for Ultravision Holdings. At the time, Shenzhen Only was manufacturing certain indoor and outdoor 480mm by 480mm LED display panels of various pixel pitches (collectively, the "Shenzhen Only Products").[1] Ultravision Holdings, however, had designed LED display panels that would be a substantial improvement over existing LED display panel products on the market, including the Shenzhen Only Products.

---

[1] The pixel pitch is the distance from the center of an LED cluster (or pixel) to the center of the next LED cluster/pixel. Pixel pitch directly correlates to display resolution and optimal viewing distance. The lower the pixel pitch, the closer the viewer can be to the display and still have a good resolution. Thus, higher pixel pitches are used for displays that will be viewed from a greater distance.

Because Ultravision Holdings would be required to share its proprietary design and technical information about the LED display panels it desired to be manufactured as part of the discussions, Ultravision Holdings required that Shenzhen Only sign a Non-Circumvention/Non-Disclosure Agreement, which Shenzhen Only did.

14.     Thereafter, and for a period of about twelve months, the President of Ultravision Holdings and its lead engineer traveled to China from time to time to meet with Shenzhen Only to discuss the possibility of Shenzhen Only producing Ultravision's LED display panels exclusively for Ultravision. At those meetings, Ultravision Holdings provided to Shenzhen Only, subject to the Non-Disclosure Agreement, certain confidential and proprietary specifications, design and technical information relating to Ultravision's LED display panels. Ultravision's LED display panels constitute a significant improvement over previous technology and LED display products and are unique in several respects, making it easy to distinguish them from other display panels on the market, including the Shenzhen Only Products.

15.     To create a large LED display screen, such as those used at sports venues or for advertising in commercial areas, multiple Ultravision LED panels are essentially connected and assembled onto a frame system that allows a large number of panels to integrate into a single electronic display. A photograph of an example of an Ultravision LED display is shown below.



16.     The features unique to the design of the Ultravision products reduce the amount of power necessary, simplify installation and reduce maintenance costs compared to other LED display products such as the Shenzhen Only Products. Ultravision's LED display panels are approximately 304.8 mm by 609.6 mm and include, but are not limited to, the V-series panels and M-series panels and any further updates of such models (collectively, the "Ultravision New Technology Products").

B.      **Ultravision and Shenzhen Only Sign a Supplier Agreement and Shenzhen Only Breaches the Agreement.**

17.     On or about November 21, 2013, Ultravision Holdings and Shenzhen Only entered into a Supplier Agreement (as subsequently amended, the "Supplier Agreement").

18.     The Supplier Agreement delineated between the Ultravision New Technology Products and the Shenzhen Only Products. *See* Supplier Agreement definition of "New Technology Products," which is equivalent to Ultravision New Technology Products as defined herein. Under the Supplier Agreement, Ultravision has the exclusive right to market and sell the Ultravision New Technology Products on a global basis. The Supplier Agreement further

-7-

expressly provides that Shenzhen Only shall not "directly, or indirectly through agents, resellers, dealers, distributors, or otherwise, promote, market or facilitate the sale, lease, other use or distribution of, or sell, lease or distribute . . . New Technology Products." *See* Supplier Agreement ¶¶2(a), 2(c). The Supplier Agreement further requires, among other things, that Shenzhen Only "shall promptly forward to Ultravision all enquiries, leads or prospective sales (however remote) in respect of . . . New Technology Products and sales, and shall not itself sell . . . New Technology Products." *Id.* at ¶2(c). The Supplier Agreement also obligates Shenzhen Only to maintain the confidentiality of Ultravision's technology and other confidential information and prohibits Shenzhen Only from using Ultravision's confidential information for any purpose other than its performance under the Supplier Agreement. *Id.* at ¶18.

19.     Ultravision Holdings agreed to provide Shenzhen Only the opportunity to manufacture the Ultravision New Technology Products for Ultravision only on the express condition that Shenzhen Only manufacture such products only for Ultravision and not undermine Ultravision's entire business by attempting to market or sell the Ultravision New Technology Products to third parties.

20.     In August 2014, Ultravision Holdings assigned its rights under the Supplier Agreement and Non-Disclosure Agreement to Ultravision.

21.     Shenzhen Only has been violating the Supplier Agreement in at least two significant respects. First, Shenzhen Only has been selling Ultravision New Technology Products directly to third parties, which is in direct violation of the agreement's exclusivity provisions. Second, Shenzhen Only has engaged in broad efforts to market Ultravision New Technology Products for sale to third parties without Ultravision's approval and without forwarding any sales leads to Ultravision. Shenzhen Only's actions further infringe the asserted claim of the '306

patent. Unless enjoined, Shenzhen Only's infringement poses a significant and imminent risk of irreparable injury to Ultravision for which there is no adequate remedy at law.

22.     Around April 2015, Ultravision's representative who works inside Shenzhen Only's facility in China forwarded Mr. Hall several photographs he had taken of Ultravision New Technology Products that appeared to be prepared for shipment to customers other than Ultravision. Some of those photos showed Ultravision's New Technology Products with a label that said "Only" rather than "Ultravision." The label used had been recently designed and provided to Shenzhen Only to use on Ultravision New Technology Products, and under no circumstances should there ever have been a label on Ultravision New Technology Products with Shenzhen Only's name on it rather than Ultravision.

23.     In addition, Camaleon LED has attempted to sell Ultravision's New Technology Products directly to one of Ultravision's largest customers. Ultravision has learned, through that customer, that Camaleon is attempting to lure Ultravision's customers away from Ultravision (and effectively as a source of sales by Shenzhen Only) by undercutting Ultravision's pricing. Of course, Camaleon would not be in a position to do so but for Shenzhen Only's breach of the Supplier Agreement. This conduct by Shenzhen Only has already damaged Ultravision's business by imposing pricing pressure on Ultravision and resulting in a loss of margins on sales to its customers.

24.     Unless Shenzhen Only's infringing activities are enjoined, Ultravision's business will suffer irreparable harm through loss of customers, market share, reputation in the industry, goodwill, and other harm. Shenzhen Only's infringement will result not only in immeasurable lost sales for Ultravision, but also put Ultravision's business at risk.

25.     It is difficult if not impossible to calculate or estimate what sales Ultravision may have already lost, or will continue to lose, if Shenzhen Only's infringement is not permanently enjoined. There is no way to know how many additional sales or new customers Ultravision might have obtained if Shenzhen Only had directed sales leads to Ultravision (as required by the Supplier Agreement) rather than attempting to utilize those leads to improperly sell the Ultravision New Technology Products itself.

C.     **Ultravision Filed Patent Applications for the Novel LED Display and the Patent Office Has Issued Multiple Patents.**

26.     Ultravision filed patent applications that have resulted in the issuance of the Patent-in-Suit, as well as additional patents.

27.     On May 24, 2016, the United States Patent and Trademark Office issued U.S. Patent No. 9,349,306 ("the '306 Patent"), entitled "Modular Display Panel," after full and fair examination.  Ultravision is the assignee of all rights, title, and interest in and to the '306 Patent and possesses all rights of recovery under the '306 Patent, including the right to recover damages for present, past, and future infringement.  A true and correct copy of the '306 Patent is attached as Exhibit A.  The '306 Patent is valid and enforceable.

28.     The Patent-in-Suit can be viewed at the website for the United States Patent and Trademark Office.     Ultravision also lists its patents on its website, http://www.ultravisioninternational.com, and also references its patents and its website in the product packaging for its products.

## COUNT I:  PATENT INFRINGEMENT OF THE '306 PATENT

29.     Paragraphs 1-28 are incorporated by reference as if fully stated herein.

30.     Shenzhen Only has been and is now directly infringing and/or indirectly infringing the '306 Patent by way of inducement and/or contributory infringement, literally

-10-

and/or under the Doctrine of Equivalents, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States infringing products.  As explained in paragraphs 32-37 below, these products and services are covered by at least one claim of the '306 Patent, including, but not limited to, Claim 1.  Upon information and belief, Shenzhen Only's Accused Products have been designed, marketed, and sold for use in attachment as part of a multi-panel modular display and have no substantial non-infringing use.

31.     Upon information and belief, Defendant derives revenue from the activities relating to Shenzhen Only's Accused Products.

32.     Upon information and belief, Shenzhen Only's Accused Products include modular display panels, as shown in the photographs below.





33.     Upon information and belief, as shown in the photographs above, Shenzhen Only's Accused Products comprise a casing having a recess.  Upon information and belief, as shown in the photograph of the back side of the product, the casing comprises attachment points for use in attachment as part of a multi-panel modular display.  Upon information and belief, the casing comprises a first side and an opposite second side, wherein the first side of the casing includes a surface that is part of an outer surface of the modular display panel.

34.     Upon information and belief, as shown in the photographs above, Shenzhen Only's Accused Products comprise a printed circuit board disposed in the recess, and a plurality of LEDs attached to a front side of the printed circuit board.

35.     Upon information and belief, as shown in the photographs below, Shenzhen Only's Accused Products comprise a driver circuit attached to the printed circuit board and a power supply unit for powering the LEDs.





36.     Upon information and belief, as shown in the photographs below, Shenzhen Only's Accused Products comprise a framework of louvers disposed over the printed circuit board, the framework of louvers disposed between rows of the LEDs.





37.     Upon information and belief, as represented by Shenzhen Only in the email advertisement below, the modular display panel is sealed to be waterproof.

---------- Forwarded message ----------
From: **Wally Xiang** <admin@onlyled.net.cn>
Date: Tue, Mar 31, 2015 at 4:00 AM
Subject: Re: How to survive in competitive LED display market
To: revfinancialservices@gmail.com

Dear   Richard Vendig,

Good Day. I am wally from Shenzhen only opto tech co., Ltd, we are an indoor and outdoor LED display manufacuturer from china.
It's Time to offer your customer **light weight,slim, high quality** and **front maintainable** LED displays.

*NO MORE OLD STYLE CABINETS*

### You are going to bring below NEW benefits to your Customers:

- Modular design.All series of panels share the same size 304.8*609.6mm, available pixel pitches includes: 3.81mm, 6.35mm,7.62mm, 9.525mm, 12.7mm,15.24mm,19.05mm,25.4mm,30.48mm.All models of panels share the same components.
- Slim. Each LED panel is only 55mm thick.
- Front access installation. Excellent solution to double-faces LED display and wall-mounted LED displays. Leaving only 200mm spacing between back side of LED display to wall.
- Light weight and Low shipment costs.less than 20KGS per square meter,air shipment and DHL/UPS/FEDEX shipment to your office.Fast turn around to your customers needs,Don't tell customers to wait two months for a boat shipment.
- Low installation costs, Low labor costs: small size and light weight panels do not require crane to lift up for installation, do not need many people for the installation,No need to build a really heavy and big frame for the display.No need to install cooling system to a LED display.
- Low maintainance costs: each panel can be removed from the LED display without interruption the programs,no need professional people to do the maintainance work.You do not need to send your technician to your customers.
- Excellent waterproof. Connectors IP68 waterproof, LED panel IP65 waterproof.
- Three years warranty.

### High Electrical and optical specification:

- High brightness:Outdoor SMD LED displays brightness over 8,000cds/$m^2$. Outdoor DIP LED displays brightness 11,000~13,000 cds/$m^2$.
- High refresh rate: MBI 5041IC, MBI5151,etc. 16BIT High refresh rate IC with PWM.No flickering before HD camera, excellent gray scale 65536.
- UL and CE listed High efficiency power supplies.Use DC 4.2V to reduce the overal consumption.

McKool 1240851v2

- Japanese brands capacitors, and global PCB manufacutuer-4 layers PCB to reduce failure rate and strong interference rejection, less than 0.1% failure rate.
- Lower power consumption, Example: Outdoor 7.62mm display, average 220W/Sqm, max 750W/Sqm. Brightness 8,000 cds/㎡.
- Brightness calibration function are available for customer's option.

**You will receive:**

- Your unique products offer will Outstand from hundreds of competitor offers received by your customers.
- High reputation in local market for offering high spec and high quality LED displays.
- Every dollar you earned from customer is safe, have good sleep and not disturbed by your customers service request phone calls.

Please click on **REPLY** to get more product materials for your customers.

Best Regards,

Wally Xiang

International Sales Manager

 **Shenzhen Only Opto Tech Co.,Ltd**

Website: www.onlyled.com
E-mail: wally@onlyleddisplay.net.cn
MSN: xianghongjie@hotmail.com
SKYPE:wallyxiang
Wechat: Xhj542133918
Mobile: +86-13682511977
Tel(China):86-755-81790558
Add:Hongfa Industrial Zone,Shiyan Town,Baoan District,Shenzhen,China
Linkedin: http://www.linkedin.com/in/wallyxiang

38.     Upon information and belief, Defendant has had actual knowledge of the '306 Patent and actual knowledge that its activities constitute either direct or indirect infringement of the '306 Patent, yet they have not ceased their infringing activities.  Defendant's infringement of the '306 Patent has been and continues to be willful and deliberate.  Defendant also has knowledge of the '306 Patent by way of this complaint and, to the extent they do not cease their infringing activities, their infringement is and continues to be willful and deliberate.

39.     Ultravision has no adequate remedy at law against Defendant's acts of infringement, and, unless Defendant is enjoined from its infringement of the '306 Patent, Ultravision will suffer irreparable harm.

40.     Defendant, by way of its infringing activities, has caused and continues to cause Ultravision to suffer damages, the exact amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

41.     A judgment in favor of Plaintiff that Defendant, has infringed, directly and indirectly, by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, the Patent-in-Suit;

42.     A preliminary and permanent injunction, enjoining Defendant and its officers, directors, agents, servants, employees, affiliates, divisions, branches, subsidiaries, parents, and all others acting in concert or privity with any of them from infringing, inducing the infringement of, or contributing to the infringement of the Patent-in-Suit;

43.     An award of damages to which Plaintiff is entitled under 35 U.S.C. § 284 and 35 U.S.C. § 154(d) for Defendant's past infringement and any continuing or infringement post-trial up until the date Defendant is finally and permanently enjoined from further infringement and a final judgment is entered, including both compensatory damages and treble damages for willful infringement;

44.     A judgment and order against Defendant for exemplary damages as determined by the trier of fact;

45.     A judgment that Defendant's infringement has been willful;

-17-

46.     Pre- and post-judgment interest as allowed by law on any damages awarded to Plaintiff;

47.     A judgment and order requiring Defendant to pay the costs of this action (including all disbursements), as well as attorneys' fees as provided by  35 U.S.C. § 285;

48.     A judgment and order requiring that, in the event a permanent injunction preventing future infringement is not granted, the Defendant pay to Plaintiff compulsory ongoing licensing fees, as determined by the Court in equity; and

49.     Such other and further relief in law or in equity to which Plaintiff may be justly entitled.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of any and all issues triable of right before a jury, except for future patent infringement, which is an issue in equity to be determined by the Court.

Dated: August 11, 2016.                    **MCKOOL SMITH, P.C.**

                                           /s/  Samuel F. Baxter
                                           Samuel F. Baxter
                                           Texas State Bar No. 01938000
                                           sbaxter@mckoolsmith.com
                                           **McKool Smith, P.C.**
                                           104 East Houston, Suite 300
                                           Marshall, Texas 75670
                                           Telephone:  (903) 923-9000
                                           Facsimile: (903) 923-9099

                                           Rosemary T. Snider
                                           Texas State Bar No. 18796500
                                           rsnider@mckoolsmith.com
                                           R. Darryl Burke
                                           Texas State Bar No. 03403405
                                           dburke@McKoolSmith.com
                                           Jennifer Henry
                                           Texas State Bar No. 24013790
                                           jhenry@mckoolsmith.com
                                           **MCKOOL SMITH, P.C.**
                                           300 Crescent Court Suite 1500
                                           Dallas, TX 75201
                                           Telephone: (214) 978-4000
                                           Telecopier: (214) 978-4044

                                           Kevin Burgess
                                           Texas State Bar No. 24006927
                                           kburgess@mckoolsmith.com
                                           Seth R. Hasenour
                                           Texas State Bar No. 24059910
                                           shasenour@mckoolsmith.com
                                           **McKool Smith, P.C.**
                                           300 W. 6th Street, Suite 1700
                                           Austin, Texas 78701
                                           Telephone:  (512) 692-8704
                                           Facsimile: (512) 692-8744

                                           ATTORNEYS FOR PLAINTIFF
                                           ULTRAVISION TECHNOLOGIES, LLC